UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| **CHRISTOPHER BOURQUE,** Individually and on behalf of all others similarly situated § § § | Docket No.    2:18-cv-779 |
| Plaintiff, § § | **JURY TRIAL DEMANDED** |
| v. § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **STALLION OILFIELD HOLDINGS, INC.** § § § | |
| Defendant. § § | |

# ORIGINAL COLLECTIVE ACTION COMPLAINT

## I. SUMMARY

1. Plaintiff Christopher Bourque ("Bourque") brings this lawsuit to recover unpaid overtime wages and other damages under Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") against Defendant Stallion Oilfield Holdings, Inc. ("Stallion" or "Defendant").

2. Stallion is a rental and distribution company operating in nationwide but with offices in Canonsburg, Carmichaels, and Williamsport, PA.

3. Stallion specializes in solids control, drilling support, completion and production, wellsite construction, offshore services, StaRComm, camp complexes, and inland-water marine services.

4. Stallion required Bourque to work substantial time over 40 hours in a week without overtime compensation due to its day rate pay practices.

5. Bourque worked at least 12 hours a day for at least 7 days a week. As a result, he often worked weeks consisting of 84 hours or more.

6. Stallion treated Bourque as an independent contractor.

7. This collective action alleges that Stallion misclassified Bourque as exempt from the

overtime requirements as day rate independent contractor, alleges that Stallion failed to pay Bourque overtime at one and one half times their regular rate of pay, and seeks to recover the unpaid overtime wages, liquidated damages, attorney fees, and costs permitted by the FLSA.

## II.   JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and because Stallion has offices in Canonsburg, PA, which is in Washington County.

10. Stallion employed Putative Class Members within this district and division.

## III.   THE PARTIES

11. While employed by Stallion, Plaintiff Bourque has worked exclusively for Stallion as solids control operator. Throughout his employment with Stallion, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. Bourque's written consent has been filed with the Court. *See* Ex. A.

12. Bourque seeks conditional certification under 29 U.S.C. § 216(b) of the following class:

> **All independent contractors paid through Stallion's day-rate system in the past three years. ("Putative Class Members").**

13. Stallion Oilfield Holdings, Inc. can be served through its registered agent: **Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808**.

## IV. COVERAGE UNDER THE FLSA

14. At all times hereinafter mentioned, Stallion has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. At all times hereinafter mentioned, Stallion has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. At all times hereinafter mentioned, Stallion has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

17. At all times hereinafter mentioned, Bourque and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

18. As will be shown through this litigation, Stallion treated Bourque and the Putative Class Members as employees and uniformly dictated the pay practices Bourque and Stallion's other employees (including its so-called "independent contractors") were subjected to.

19. Stallion's misclassification of Bourque as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

## V.   FACTS

20. Stallion is a rental and distribution services company with significant operations throughout Pennsylvania.

21. Plaintiff Bourque, for example, worked as a solids control operator on behalf of Stallion.

22. Stallion provides solids control, drilling support, completion and production, wellsite construction, offshore services, StaRComm, camp complexes, and inland-water marine services.

23. Many of the individuals working for Stallion as solids control consultants (among

other positions) are paid on a day-rate basis and make up the proposed Putative Class.

24. While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work.

25. Specifically, Stallion paid its independent contractors a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that work week).

26. Stallion failed to provide its day rate independent contractors with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

27. For example, Plaintiff Bourque was employed by Stallion as a solids control consultant during the statutory time period and was paid on a day-rate basis.

28. In this regard, his primary job duties (and the job duties of all other solids control consultants employed by Stallion who were paid a day-rate) included maintaining and operating solids control equipment (centrifuge, drying shakers, desanders, desilters, etc.), repairing electrical issues, and assisting with rigging up and rigging down of solids control equipment.

29. Stallion typically scheduled Bourque to work twelve (12) hour shifts, for as many as seven (7) days a week.

30. Bourque estimates that he worked anywhere from eighty-four (84) to one-hundred (100) hours per week while employed by Stallion as a solids control consultant.

31. The daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Stallion. Virtually every job function was pre-determined by Stallion, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

32. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college

education or other advanced degree. In fact, there was no unique skill or initiative required to before the services Bourque or the other Putative Class Members performed for Stallion.

33. The Putative Class Members did not have any supervisory or management duties. To the contrary, Stallion dictated the duties performed by Bourque and the other Putative Class Members.

34. The Putative Class Members were not paid on a salary basis. Stallion decided to pay Bourque and the Putative Class Members on a day rate, prohibiting their ability to determine their own profit and loss.

35. Stallion employed solids control workers as W-2 employees during the limitations period.

36. The Putative Class Members worked alongside the W-2 employees of Stallion.

37. The Putative Class Members performed the same duties as the W-2 employees of Stallion.

38. The fact that Stallion employed W-2 solids control workers and 1099 consultant solids control workers side by side, performing the same duties demonstrates that Bourque and the Putative Class Members are integral to the operations of Stallion.

39. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

40. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

41. The Putative Class Members were generally scheduled to work eighty-four (84) hours per workweek, but often worked more.

42. Instead of paying them overtime, Stallion paid the Putative Class Members a day-rate. Stallion denied the Putative Class Members overtime for any and all hours worked in excess of

forty (40) hours in a single workweek. As the controlling law makes clear, the day rate pay practice to employees, without a salary, violates the FLSA and requires overtime pay. Therefore, Stallion owes back overtime wages to hundreds of their solids control independent contractors, all of whom work long hours each workweek.

## VI.     FLSA VIOLATIONS

43.     As set forth herein, Stallion violated the FLSA by misclassifying Bourque and the Putative Class Members as independent contractors and paying only a day rate for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a); NMSA § 50-4-22.

44.     Stallion knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bourque and the Putative Class Members proper overtime compensation. Stallion's failure to pay proper overtime compensation to Bourque and the Putative Class Members and intentional misclassification of Bourque and the Putative Class Members was neither reasonable, nor was the decision not to pay proper overtime to Bourque and the Putative Class Members made in good faith.

45.     Accordingly, Bourque and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

46.     The improper pay practices at issue were part of a continuing course of conduct, entitling Bourque and the Putative Class Members to recover for all such violations, regardless of the date they occurred.

## VII.     COLLECTIVE ACTION ALLEGATIONS

47.     As described above, Bourque and the Putative Class Members have been victimized by Stallion's pattern, practice, and/or policy, which is in willful violation of the FLSA.

48.     Many Putative Class Members worked alongside Bourque and reported that they

were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA.

49. Many Putative Class Members, regardless of the division or location in which the worked, performed similar job duties to Bourque.

50. Thus, Stallion imposed a uniform practice or policy on Bourque and the Putative Class Members regardless of any individualized factors.

51. Bourque and the Putative Class Members received a day rate, regularly worked in excess of 40 hours per week, and were not paid overtime compensation.

52. Bourque and the Putative Class Members did not receive a salary.

53. As described above, these day rate Putative Class Members are similarly situated to Bourque in terms of relevant pay provisions and employment practices.

54. Stallion's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policy, and/or practice which are not dependent on the personal circumstances of any member of the day rate Class Members.

55. Bourque's experiences are typical of the experiences of all day rate Putative Class Members.

56. Bourque has no interests contrary to, or in conflict with, the members of the FLSA Putative Class Members. Like each member of the proposed class, Bourque has an interest in obtaining the unpaid overtime wages owed under federal law.

57. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

58. Absent this action, many FLSA Putative Class Members likely will not obtain redress of their injuries and Stallion will reap the unjust benefits of violating the FLSA.

59. Furthermore, even if some of the FLSA Putative Class Members could afford

individual litigation against Stallion, it would be unduly burdensome to the judicial system.

60. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

61. The questions of law and fact common to each of the FLSA Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    (a) Whether Stallion employed the FLSA Putative Class Members within the meaning of the FLSA;

    (b) Whether the FLSA Putative Class Members were exempt from overtime as independent contractors;

    (c) Whether the FLSA Putative Class Members were paid on a salary basis;

    (d) Whether Stallion's decision to not pay overtime to the FLSA Putative Class Members and was made in good faith; and

    (e) Whether Stallions violation of the FLSA was willful.

62. Bourque and the FLSA Putative Class Members have sustained damages arising out of Stallion's illegal and uniform employment policy.

63. Bourque knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

64. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

## VIII.   JURY DEMAND

65. Bourque demands a trial by jury.

## IX.    RELIEF SOUGHT

66.   WHEREFORE, Bourque prays for judgment against Stallion as follows:

(a)   For an order certifying this case as a collective action for the purposes of the FLSA claims;

(b)   For an order finding Stallion liable for violations of federal wage laws with respect to Bourque and all Putative Class Members covered by this case;

(c)   For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Bourque and all Putative Class Members covered by this case;

(d)   For a judgment Bourque and all Putative Class Members covered by this case their costs of this action;

(e)   For a judgment awarding Bourque and all Putative Class Members covered by this case their attorneys' fees;

(f)   For a judgment awarding Bourque and all Putative Class Members covered by this case pre - and post-judgment interest at the highest rates allowed by law; and

(g)   For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    Michael A. Josephson
    Pennsylvania Bar No. 308410
    Texas Bar No. 24014780
    Andrew Dunlap
    Texas Bar No. 24078444
    *(Pending Pro Hac Vice)*
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    Joshua P. Geist
    PA. I.D. No. 85745
    **GOODRICH & GEIST, P.C.**
    3634 California Ave.
    Pittsburgh, PA 15212
    Tel: 412-766-1455
    Fax: 412-766-0300
    josh@goodrichandgeist.com

    **AND**

    Richard J. (Rex) Burch
    Texas State Bar No. 24001807
    (*Pending Pro Hac Vice*)
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**